IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD B. COLVIN, debtor, | ) | CV. NO. 5:13-CV-859-DAE |
| | ) | Bankr. No. 12-ap-05032 |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMEGY MORTGAGE COMPANY, | ) | |
| L.L.C., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER VACATING BANKRUPTCY COURT ORDER AND REMANDING TO BANKRUPTCY COURT

Debtor Richard B. Colvin ("Colvin") appeals the bankruptcy court's order dismissing with prejudice Colvin's adversary proceeding against Appellee Amegy Mortgage Company ("Amegy").  (Dkt. # 3.)  For the foregoing reasons, the Court **VACATES** the bankruptcy court's denial of Colvin's Rule 60 Motion and corresponding dismissal order, and **REMANDS** to the bankruptcy court with instructions to dismiss Colvin's easement claim for lack of subject-matter jurisdiction.

1

BACKGROUND

The instant appeal involves a long, narrow tract of land of approximately 47.84 acres in Hunt, Texas (the "Property") owned by Colvin. (Dkt. # 3 ¶¶ 1–2.)  In December 2005, Colvin obtained a loan from Amegy.  (Id. ¶ 1.)  To secure payment on the loan, Colvin granted a lien to Amegy on the Property.  (Id.)

In November 2006, the note securing the loan was renewed and extended.  (Id. ¶ 5.)  This time, however, Colvin granted a lien to Amegy only for the front half of the Property ("Home Tract").  (Id.)  The back half of the Property ("Cell Tower Tract") was subject to a lease for a cell tower and was unencumbered.  (Id. ¶ 2.)  According to Colvin, the Cell Tower Tract has no road access except for over the remainder of the Home Tract.  (Id.)

Colvin contends that on January 19, 2007, Amegy executed and recorded a Release of Lien, which provided, "In consideration of the full and final payment of the Note, Holder of the Note and Lien releases the Property from the lien from any and all other liens against the Property that secured payment of the Note."  (Id. ¶ 6.)  Colvin maintains that on February 23, 2011, Amegy recorded a "Corrected Deed of Trust," which served to perfect Amegy's security interest in

the Home Tract for the loan extended in November 2006.[1]  (Id. ¶ 9.)

I.      Bankruptcy Case

On April 4, 2011, Colvin filed for Chapter 12 bankruptcy.  (Id. ¶ 10.)
Colvin listed Amegy as a secured creditor with a valid lien on the Home Tract
owned by Colvin.  (Id.)  During the pendency of the bankruptcy action, Amegy
filed a motion seeking relief from the automatic bankruptcy stay (the "Lift Stay
Motion") to conduct a foreclosure sale.  (Bankr. Case No. 11-51241-lmc
[hereinafter Bankr.] Dkt. # 27.)[2]  Colvin filed a response opposing Amegy's Lift
Stay Motion.  (Bankr. Dkt. # 30.)

On June 3, 2011, however, Colvin, Amegy, and the Chapter 12
Trustee ("Trustee") agreed that if Colvin could not sell the Home Tract in six
months, then Amegy could foreclose its deed of trust lien against the Home Tract.
This agreement was memorialized in an Agreed Order, which was submitted to the
bankruptcy court.[3]  On June 7, 2011, in light of the Agreed Order, the bankruptcy

---

[1] Presumably, Amegy filed the Release of Lien for the 2005 loan that encumbered
the entire Property and then later filed a Corrected Deed of Trust for the 2006 loan
that only encumbered the Home Tract.

[2] All documents referred to in the bankruptcy docket appear in the appellate record;
however, for clarity, the Court will refer to the respective bankruptcy docket
numbers.

[3] The parties did not provide a copy of their Agreed Order that was submitted to
the bankruptcy court, and the bankruptcy court docket does not contain a copy.

court entered an Agreed Order Terminating Stay.  (Bankr. Dkt. # 35.)  Colvin

amended his chapter 12 bankruptcy plan to include the following language:

> **Class 6. Amegy Mortgage Company LLC:**
> On June 7, 2011, this Court entered an Agreed Order conditioning the
> automatic stay by and between AMC and the captioned debt related to
> the debt and real property that is subject of that Motion for Relief
> from Stay filed by AMC.  The Agreed Order was entered as document
> # 35 on the Court's docket.  The Agreed Order essentially gives the
> Debtor until January 3, 2012 to sell the 23.10 acres of real property
> that Colvin has claimed as his homestead. The Agreed Order states
> that if AMC is not paid in full prior to January 3, 2012, AMC is
> allowed to proceed with a non-judicial foreclosure sale that will be
> noticed and scheduled for January 3, 2012.

(Bankr. Dkt. # 104).

On December 8, 2011, the bankruptcy court confirmed Colvin's

chapter 12 bankruptcy plan.  (Bankr. Dkt. # 146.)

Six months later, Colvin had not sold the Home Tract.  On February 7,

2012, Amegy posted the Home Tract for a non-judicial foreclosure sale.  On

February 29, 2012, Amegy conducted the foreclosure sale and foreclosed on the

Home Tract.  (See Dkt. # 3 ¶ 18.)

II.     First Adversary Proceeding

On March 13, 2012, less than a month after Amegy foreclosed on the

Home Tract, Colvin filed an adversary proceeding ("Adversary Proceeding I") in

bankruptcy court seeking a declaration of an easement across the Home Tract.

(Bankr. Adversary Case No. 12-05032 ("Adversary I") Dkt. # 1.)  On May 2, 2012,

Amegy filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)
on the basis of res judicata.  (Adversary I Dkt. # 4.)  Under Local Bankruptcy Rule
7012, Colvin had twenty-one days to respond to Amegy's Motion to Dismiss.
Colvin did not file a response.  On May 31, 2012, Bankruptcy Judge Leif Clark
entered an order dismissing with prejudice Colvin's adversary proceeding against
Amegy ("Order").  (Adversary I Dkt. # 5.)  Colvin did not appeal the bankruptcy
court's order.

     Nearly a year later on May 29, 2013, Colvin filed a Motion for Relief
from Order Dismissing Adversary Proceeding with Prejudice.  (Adversary I Dkt.
# 7.)  He filed an Amended Motion for Relief pursuant to Federal Rule of Civil
Procedure 60 ("Rule 60 Motion") on June 18, 2013.  (Adversary I Dkt. # 11.)
Colvin asserted that the order dismissing his adversary proceeding against Amegy
should not have been "with prejudice" because it was the result of a clerical error
and, in the alternative, the bankruptcy court did not have constitutional authority to
enter a final order in a non-core proceeding.  (See id. ¶ 7.)  Amegy filed a response
arguing that Judge Clark had purposefully dismissed the adversary proceeding with
prejudice and that Colvin had waived any argument challenging the bankruptcy
court's constitutional, adjudicative authority.  (Adversary I Dkt. # 12 ¶¶ 13–24.)

     By the time Colvin had filed his Rule 60 Motion, Judge Clark had
retired.  Bankruptcy Judge Craig Gargotta, Judge Clark's successor, held a hearing

on Colvin's Rule 60 Motion.  Judge Gargotta first questioned Colvin's counsel regarding why his Rule 60 Motion asserting clerical errors was filed over a year after the original order was issued, and Colvin's counsel admitted that it was due to his neglect:

> THE COURT: So, why the revelation now that we need to correct the order if it was issued over a year ago?  You got a copy of it; right?
>
> MR. GERGER: I did get a copy of the order.
>
> THE COURT: And you read it?
>
> MR. GERGER: Judge, I'll tell you what happened. . . .
>
> . . . .
>
> The order came through the E- -- The order came through on the ECF service.
>
> . . . .
>
> I knew that it was a motion to dismiss, and did not ask for dismissal with prejudice.  Frankly, Judge, I don't remember if I opened that order or not, but I received the order.
>
> . . . .
>
> And, in fact, Judge, it wasn't until the second adversary proceeding was filed, and Amegy Mortgage filed its motion to dismiss and referenced the dismissal with prejudice, that then I realized that it was dismissed with prejudice.
>
> So, there were times, Judge, that this could have been brought sooner.  No doubt about it.

(Rule 60 Motion Tr. Hr'g 6:12–18, 6:20–22, 6:24–7:2, 7:13–19 August 19, 2013.)

Colvin then argued that despite his delay, Rule 60 relief was
warranted because "[Amegy's] motion to dismiss [didn't] seek dismissal with
prejudice" and "under 60(a), that just seems to be an error in the drafting of the
order because there was no request for a dismissal with prejudice." (Id. 9:14–18.)
Counsel for Amegy explained that although their motion to dismiss did not
specifically request relief with prejudice, their proposed order attached to their
motion did include the phrase "with prejudice," and that Judge Clark signed the
proposed order Amegy submitted. (Id. 15:13–20.) After hearing both arguments,
the Court noted:

> Now, for all we know, Judge Clark, who was a jurist, as you
> know, for 25 years, may have carefully considered the -- merits of that
> motion, and may -- and reached the conclusion that it's appropriate to
> grant the relief requested.
>
> . . . .
>
> I can tell you, I did not talk to Judge Clark about this. You
> know, if I may remind you all, I did practice in front of him for 17
> years, and that he was my colleague for five years. I am pretty
> comfortable in noting on the record what he did was, he or his law
> clerk read the motion and found it meritorious. I genuinely believe
> that. I don't think that what was -- an order was put in front of his
> face and he just signed it. That's not how he conducted his court.

(Id. 24:9–13, 28:13–22.) The court then denied the motion, reasoning:

> The point of a motion under Rule 60 is where there's it's [sic]
> been newly discovered evidence or there was a clerical error
> committed, or things of the nature that -- that once properly
> discovered are brought to the Court's attention.
>
> . . . .

[T]he case was closed in May, on May 31st of 2012.  As the parties are acutely aware, an order becomes final, under the bankruptcy rules, 14 days later.  Mr. Gerger acknowledges he received it, just didn't look at it, thought he had some agreement with [counsel for Amegy] Mr. Badger.  But nonetheless, the order became final.

Nearly a year later, within two days of the one-year window rule, he files the motion to amend, complaining of a clerical error, or that this really is not a proper 12(b)(6) that gives rise to finality on the merits.

First of all, I think the motion does ask for final adjudication, which indicates dismissal.

Second of all, there's absolutely no dispute about what Judge Clark did in granting the motion.  There's, in my mind, no dispute about the fact that he considered the merits of the motion; that, as Mr. Gerger acknowledged, there was no response filed.  He considered whatever evidence was provided, as well as the case law, and reached the conclusion that on the merits, the case needed to be dismissed, and it needed to be dismissed with prejudice.

So, I'm having a hard time understanding nearly -- well, almost a year after the fact, how anything has changed.  And, frankly, nothing has changed.  The facts that existed in May of 2012 are the same as the facts existing now.

My opinion is, if counsel wanted to challenge the validity of this order, it should have been done so a long time ago, and the neglect, unfortunately, for him, operates as a detriment to his client's position.

There's just no -- In my mind, there's just no cause for the delay on this.  I can't fathom why it took so long to deal with this.

There -- There are no intervening events that have been provided to the Court to suggest why counsel was unable to get this on file sooner, because had it been filed, and Judge Clark had the opportunity to consider it.  Maybe then we would have benefitted from Judge Clark's thought process as to why he granted the motion

with prejudice, as he did.  But we don't have that benefit now because, happily for him, he's retired.

. . . .

So, all I know is that this is what Judge Clark did.  As I have indicated, it's not dispositive of anything.  So, there's no reason to believe that he didn't consider the merits of the motion, make the appropriate finding, that it was with dismissal [sic].

Again, had the Debtor felt that that was the improper decision, the Debtor's right was to timely exercise its remedies at law and get a motion to reconsider it in front of Judge Clark.  The Debtor clearly neglected to do that.

A year later, I can't see there have been any circumstances changed that would establish cause under Rule 60, so the motion is denied.

(Id. 30:22–31:1, 31:12–33:5, 33:8–20.)  The court later reflected its oral ruling in a

dismissal order that also denied Colvin's Rule 60 Motion.  (Adversary I Dkt. # 15.)

On July 17, 2013, Colvin sought reconsideration of the denial order

(Adversary I Dkt. # 17; see also Adversary I Dkt. # 18), which the bankruptcy

court later denied (Adversary I Dkt. # 19).  The court again held that the entry of

the dismissal order was a "deliberate decision" and not the result of a clerical error.

(Id. at 2.)

Colvin appealed the bankruptcy court's denial of Colvin's Rule 60

Motion and its corresponding dismissal order.  (Adversary I Dkt. # 21; Dkt. # 1.)

This appeal is now before the Court.  Pursuant to the Court's briefing schedule

(Dkt. # 2), Colvin filed his Opening Brief on October 1, 2013.  ("Opening Br.,"

Dkt. # 3.)  On October 15, 2013, Amegy filed its Answering Brief.  ("Answering Br.," Dkt. # 6.)

## LEGAL STANDARD

A district court reviews a bankruptcy court's findings of fact for clear error.  In re Kennard, 970 F.2d 1455, 1457–58 (5th Cir. 1992) (citing In re Multiponics, Inc., 622 F.2d 709, 713 (5th Cir. 1980)).  Conclusions of law are reviewed de novo.  Id. at 1458; In re Stembridge, 394 F.3d 383, 385 (5th Cir. 2004).

## DISCUSSION

For the first time on appeal, Colvin argues that the bankruptcy court lacked jurisdiction to dismiss his Rule 60 Motion.  (Opening Br. at 26.)  According to Colvin, because the bankruptcy court did not have jurisdiction to hear the adversary proceeding, it could not dismiss the proceeding with prejudice and, as a corollary, could not issue a final judgment denying his Rule 60 Motion.

Alternatively, Colvin argues that the bankruptcy court erred in denying his Rule 60 Motion for relief from the dismissal with prejudice.  (Id. at 18–22.)  Colvin contends that the earlier dismissal with prejudice must have been a clerical error because Amegy's Motion to Dismiss did not ask that the action be dismissed with prejudice.  (Id. at 22.)

I.   <u>Did the Bankruptcy Court Have Jurisdiction and Adjudicative Authority to Issue a Final Order on Colvin's Easement Claim?</u>

The Court begins by noting that the parties' arguments on bankruptcy court jurisdiction do not aid this Court's jurisdictional analysis. Colvin only attacks the bankruptcy court's jurisdiction over his easement claim by arguing that bankruptcy courts do not have jurisdiction to rule on matters of state law. (Opening Br. at 26.) However, the Fifth Circuit has explained that "the distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings" because "the bankruptcy judge is constantly enmeshed in state-law issues." <u>In re Wood</u>, 825 F.2d 90, 96 (5th Cir. 1987).

Amegy counters that bankruptcy court jurisdiction is proper because "[i]n opting to litigate before the Bankruptcy Court and pleading jurisdiction, Colvin consented to the Bankruptcy Court's entry of a final judgment in this matter and has waived his right to challenge jurisdiction under <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011)." (Answering Br. at 13.) But that argument is flawed for several reasons. First, "[i]t is well-settled, however, that the subject-matter jurisdiction of a federal court can be challenged at any stage of the litigation (including for the first time on appeal), even by the party who first invoked it." <u>In re Canion</u>, 196 F.3d 579, 585 (5th Cir. 1999); <u>accord</u> <u>Kontrick v. Ryan</u>, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any

time in the same civil action, even initially at the highest appellate instance."). Additionally, <u>Stern</u> dealt with a bankruptcy court's adjudicative power to issue a final order under 28 U.S.C. § 157—not a bankruptcy court's subject-matter jurisdiction, 131 S. Ct. at 2611–20, and that statute clearly requires that <u>both</u> parties consent for a bankruptcy court to enter a final order, 28 U.S.C. § 157(c)(2). Here, Amegy's Motion to Dismiss clearly contested the bankruptcy court's adjudicative authority and did not consent to a final adjudication by that court. (Adversary I Dkt. # 4 ¶¶ 27–28.)

Although the parties' briefing on the bankruptcy court's jurisdiction could have been more on point, the Court is obligated to raise the matter sua sponte. <u>In re Stonebridge Techs., Inc.</u>, 430 F.3d 260, 265 (5th Cir. 2005); <u>In re Camp Arrowhead, Ltd.</u>, 451 B.R. 678, 694 (Bankr. W.D. Tex. 2011) (Clark, J.) (reminding that bankruptcy court jurisdiction "can be considered by a court on a sua sponte basis"). Accordingly, the Court will independently examine whether the bankruptcy court had subject-matter jurisdiction over Colvin's easement claim and if it did, whether the bankruptcy court was constitutionally entitled to enter a final order dismissing the claim. <u>In re OCA, Inc.</u>, 551 F.3d 359 (5th Cir. 2008) (outlining the two-step inquiry, which includes whether bankruptcy court had subject-matter jurisdiction and the extent of its judicial power to enter a final order).

A.      The Bankruptcy Court's Subject-Matter Jurisdiction

The starting point to resolving whether a bankruptcy court has subject-matter jurisdiction is 28 U.S.C. § 1334.  That section grants jurisdiction to district courts in all civil proceedings "arising under title 11 [the Bankruptcy Code], or arising in, or related to cases under title 11."  The district courts may, in turn, refer any or all proceedings "arising under title 11" or "arising in" or "related to a case under title 11" to the bankruptcy judges for the district.  28 U.S.C. § 157(a).  In the Western District of Texas, the district court has in fact referred all of these matters to the bankruptcy judges for the district.  See Order No. 84-01, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Aug. 13, 1984); accord Order No. 13-01, Order of Reference of Bankruptcy Cases and Proceedings (Oct. 4, 2013).

As extensions of the district courts, bankruptcy courts are authorized to hear three categories of civil proceedings ancillary to underlying bankruptcy cases: (1) those "arising under title 11," (2) those "arising in . . . a case under title 11," and (3) those that are "related to a case under title 11."  28 U.S.C. § 1334(b); 28 U.S.C. § 157(a); Stern, 131 S. Ct. at 2603.  The Fifth Circuit in In re Wood described the first two categories:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. . . .  The meaning of "arising in" proceedings is less clear, but seems to be a reference to those

"administrative" matters that arise only in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

825 F.2d at 96–97.  For the third category, the Fifth Circuit follows the Third Circuit's "related to" test: "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedoms of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id. at 93 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  The "related to" category of cases is quite broad and includes proceedings in which the outcome "could conceivably have any effect on the estate being administered in bankruptcy."  In re Canion, 196 F.3d at 585 (quoting Pacor, 743 F.2d at 994).  "Certainty or even likelihood of such an effect is not a requirement."  Id. at 587 n.30.

However, when a bankruptcy plan has been confirmed by the bankruptcy court, the scope of a bankruptcy court's subject-matter jurisdiction is circumscribed.  Despite the fact that "[s]ection 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," In re Brass Corp., 301 F.3d 296, 304 (5th Cir. 2002), the Fifth Circuit adheres to a "more exacting theory of post-confirmation bankruptcy jurisdiction": "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to

14

exist, other than for matters pertaining to the implementation or execution of the plan." In re Craig's Stores of Tex., Inc., 266 F.3d 388, 390–91 (5th Cir. 2001).

When the Fifth Circuit held that the bankruptcy court lacked subject-matter jurisdiction over the breach-of-contract action in Craig's Stores because the bankruptcy court had already confirmed the debtor's bankruptcy plan, the court relied on three factors: first, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." Id. at 391. Although the holding of Craig's Stores—that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan"—was somewhat broad, the facts that precipitated that holding were narrow, involving post-confirmation claims based on post-confirmation activities.

A year after Craig's Stores, the Fifth Circuit held that a post-confirmation claim based on pre-confirmation activities fell within the ambit of post-confirmation bankruptcy court jurisdiction. U.S. Brass Corp., 301 F.3d at 304–05. There, even though U.S. Brass's reorganization plan had been substantially consummated, the court noted that U.S. Brass and others still had an obligation to resolve the Shell/CAN claims (including whether or not to submit the

15

claims to binding arbitration), which were at the heart of the dispute.  Id. at 305.

The court held that the outcome of the parties' dispute "could affect the parties'

post-confirmation rights and responsibilities" and could "certainly impact

compliance with or competition of the reorganization plan."  Id.  Consequently, the

court determined that the bankruptcy court had jurisdiction because the dispute

"pertain[ed] to the plan's implementation or execution," and thus "satisfie[d] the

Craig's Stores test for post-confirmation jurisdiction."  Id.

            Colvin's easement claim, however, presents a different scenario than

in In Re Brass, Corp. as that claim arose post-confirmation and involved post-

confirmation activities (or at least, did not involve pre-confirmation activities) and

did not relate to his Chapter 12 Plan of Reorganization.  Contrary to U.S. Brass

Corp., Colvin's easement claim is similar to the breach-of-contract claim in Craig's

Stores.  There, the debtor, Craig's Stores, did business with the Bank of Louisiana

since 1989, using the Bank to administer Craig's in-house private label credit card

program.  In re Craig's Stores of Tex., Inc., 266 F.3d at 389.  The parties' complex

arrangement continued after Craig's Stores sought Chapter 11 bankruptcy

protection in 1993, and their contract was assumed as part of Craig's

reorganization plan confirmed in December 1994.  Id.  Craig's later sued the Bank

in bankruptcy court, asserting state-law claims for damages alleged to have arisen

in 1994 and 1995—eighteen months after the bankruptcy court had confirmed

16

Craig's reorganization plan.  Id.  On appeal, the Fifth Circuit explained that Craig's

claim against the Bank principally dealt with post-confirmation relations between

the parties:

> There was no antagonism or claim pending between the parties as of
> the date of the reorganization.  The fact that the account management
> contract existed throughout the reorganization and was, by
> implication, assumed as part of the plan is of no special significance.
> And even if such circumstances might bear on post-confirmation
> bankruptcy court jurisdiction, no facts or law deriving from the
> reorganization or the plan was necessary to the claim asserted by
> Craig's against the Bank.  Finally, while Craig's insists that the status
> of its contract with the Bank will affect its distribution to creditors
> under the plan, the same could be said of any other post-confirmation
> contractual relations in which Craig's is engaged.

Id. at 391.  "In sum," the court held, "the state law causes of action asserted by

Craig's against the Bank do not bear on the interpretation or execution of the

debtor's plan and therefore do not fall within the bankruptcy court's

post-confirmation jurisdiction."  Id.

        Much like Craig's breach-of-contract claim, Colvin's easement claim

did not implicate the interpretation or execution of his Chapter 12 Plan of

Reorganization.  Instead, this was a state-law claim entirely independent of

Colvin's reorganization plan—indeed, it was entirely independent of Colvin's

bankruptcy.  It arose post-confirmation and did not involve any pre-confirmation

activities.  Colvin should not have been permitted to "come running to the

bankruptcy court every time something unpleasant happen[ed]."  Id. at 390

(quoting <u>Pettibone Corp. v. Easley</u>, 935 F.2d 120, 122 (7th Cir. 1991)).  Under the Fifth Circuit's "more exacting theory of post-confirmation bankruptcy jurisdiction," <u>id.</u> at 391, the bankruptcy court did not have post-confirmation subject-matter jurisdiction over Colvin's easement claim.

     Because the bankruptcy court lacked jurisdiction to adjudicate Colvin's easement claim, it lacked jurisdiction to deny Colvin's Rule 60 Motion and dismiss Colvin's easement claim.  Rather, the court should have dismissed the action for lack of subject-matter jurisdiction.  <u>See</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); <u>see also</u> <u>Giannakos v. M/V Bravo Trader</u>, 762 F.2d 1295, 1297 (5th Cir. 1985) ("United States District Courts . . . have the responsibility to consider the question of subject matter jurisdiction sua sponte if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.").

II.    <u>Adjudicatory Power</u>

     A separate question from whether a bankruptcy court has subject-matter jurisdiction—but one that is often confused with it—is whether the court has constitutional power to enter a final order in a proceeding under 28 U.S.C. § 157.  Because the bankruptcy court lacked subject-matter jurisdiction over Colvin's easement claim, the Court need not consider whether the bankruptcy court had adjudicative authority to enter a final order.

CONCLUSION

For the foregoing reasons, the Court **VACATES** the bankruptcy court's denial of Colvin's Rule 60 Motion and corresponding dismissal order, and **REMANDS** to the bankruptcy court with instructions to dismiss Colvin's easement claim for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

DATED: San Antonio, Texas, March 28, 2014.

_____
David Alan Ezra
Senior United States District Judge